

**SO ORDERED.**

**SIGNED this 08 day of June, 2007.**

                                     **JAMES D. WALKER, JR.**
                        **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 07-50293-JDW |
| VERNON MAX FLAGER, JR., | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Debtor:        Jason M. Orenstein
                          Post Office Box 4086
                          Macon, Georgia 31208

For Creditors:     Camille Tribble
                          Emmett L. Goodman, Jr.
                          544 Mulberry Street, Suite 800
                          Macon, Georgia 31201

**MEMORANDUM OPINION**

This matter comes before the Court on Terry and Larry Hortman's objection to confirmation. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor, Vernon Max Flager, Jr., filed a Chapter 13 petition on February 7, 2007. On Schedule D, he listed Terry Hortman as a secured creditor with a lien on a 1993 GMC Sierra pickup truck. Larry Hortman filed a proof of claim (claim no. 1) in the name of "Terry or Larry Hortman," showing a secured claim of $9,750, secured by a vehicle valued at $4,700.[1] (Creditor's ex. 2.)

Debtor's proposed plan made no provision to pay Larry Hortman as a secured creditor. The Hortmans, who are brothers, objected to confirmation of the plan because it proposed to pay their claim as unsecured with a 0% dividend. Debtor opposed the objection on the ground that Debtor never gave the Hortmans a security interest in the GMC truck.

The debt arose because Larry Hortman advanced Debtor the money to purchase the GMC truck. On May 27 and 28, 2002, Debtor and the Hortmans executed a number of documents memorializing the debt. First, Debtor signed a handwritten document titled "Promissory Note"

---

[1] The Hortmans filed a second proof of claim (claim no. 7) for $9,160 in unsecured debt related to past due rent. (Debtor's ex. 1.)

and dated May 28, 2007, that provided as follows:

> For value recieved, [sic] the undersigned promises to pay to the holder of this note Larry G. Hortman the sum of $9750.00 nine thousand seven hundred & fifty dollars. This amount includes 600.00 six hundred dollars interest.
> This note shall be paid in 9 nine consecutive payments of one thousand dollars $1000.00 with the first payment due on July 1 2002. The final payment of $750.00 seven hundred & fifty dollars paid at the end of the note.
> The undersigned maker may repay this note in whole or in part without penalty.
> This contract shall be constituted [sic] in all respects and enforced according to the laws of the state of Georgia.

(Creditors' ex. 2.)

Second, Debtor executed a "Buyers Order" dated May 27, 2002, from Autos Unlimited for the purchase of the GMC truck for a total cost of $6,000, including vehicle price, tax, and title fee. (Creditors' ex. 2.) Third, Debtor signed a "Due Bill" for certain work to be performed on the GMC truck as a condition of the purchase. (Creditors' ex. 2.) Fourth, Debtor signed a "Title Application" for the GMC truck, dated May 27, 2002, that listed Larry G. Hortman as a lienholder. (Creditors' ex. 2.) Fifth, Debtor signed a "Limited Power of Attorney For Completing Motor Vehicle Transactions," dated May 27, 2002, for purposes of obtaining a certificate of title. (Creditors' ex. 2.)

At a hearing held on May 21, 2007, Debtor stipulated to the authenticity of all the documents. In addition, he testified that he signed all the documents on the same day. Debtor testified the note covered the debt for the truck and other debt he owed the Hortmans. He also testified he understood Larry Hortman would have a lien on the truck. Debtor stated he understood when someone has a lien, it means that person has a security interest.

3

After considering the evidence and the arguments of the parties, the Court will sustain the objection to confirmation.

**Conclusions of Law**

Pursuant to Article 9 of Georgia's Commercial Code, a creditor may only enforce a security interest in collateral against the debtor and third parties if three requirements are satisfied: (1) the debtor received value; (2) the debtor has rights in the collateral; and (3) "[t]he debtor has authenticated a security agreement that provides a description of the collateral[.]" O.C.G.A. § 11-9-203(b)(3)(A). The only requirement in dispute in this case is whether Debtor authenticated a security agreement.

A security agreement is "an agreement that creates or provides for a security interest." Id. § 11-9-102(72). Authentication requires the debtor "[t]o sign" or "[t]o execute ... with the present intent of the authenticating person to identify the person and adopt or accept a record." Id. § 11-9-102(7). Thus, the need for authentication imposes "an evidentiary requirement in the nature of a Statute of Frauds." U.C.C. § 9-203, cmt. 3.

In In re Hollie, 42 B.R. 111 (Bankr. M.D. Ga. 1984),[2] the court said, "Georgia law ... does not require 'magic words' to create a valid security interest. A clause that specifically grants a party a security interest is not necessary. Rather, the Court must refer to the general law of contracts and determine whether the parties intended to create a security agreement." Id. at 117 (citing Barton v. Chemical Bank, 577 F.2d 1329 (11th Cir. 1978)). See also, In re Seibold, 351

---

[2] The case law on this issue from Georgia courts is both scarce and dated. The cases refer to prior versions of Article 9. However, the relevant provisions have not materially changed.

B.R. 741, 745-46 (Bankr. D. Idaho 2006); In re Sabol, 337 B.R. 195, 198 (Bankr. C.D. Ill. 2006). The court in Trust Company Bank v. Walker (In re Walker), 35 B.R. 237 (Bankr. N.D. Ga. 1983), reached a similar conclusion about Georgia law, stating, "A security agreement need not be in any particular form" so long as it consists of a writing signed by the debtor that reasonably describes the collateral and includes language evidencing an intent to create a security interest. Id. at 239-240. Furthermore, the security agreement need not be enshrined in one document. For example, "a financing statement alone cannot serve as a 'security agreement.' ... [H]owever, [courts] recognize that a financing statement attended by other documents or circumstances may suffice as a valid 'security agreement.'" In re Carmichael Enter., Inc., 334 F. Supp. 94, 104-05 (N.D. Ga. 1971) (internal citations omitted).

In Hollie, the court found the contract at issue was a security agreement that created a security interest. 42 B.R. at 117. The contract did not include a specific clause granting a security interest. However, it was titled a "security agreement," it referred to the creditor as the secured party, and it provided its purpose and intent were to secure a note. Id.

The facts of this case are not quite as persuasive. Nevertheless, they lead the Court to the same conclusion reached in Hollie. Debtor signed a note acknowledging a debt to Larry Hortman, signed a bill of sale for the purchase of a truck, and–most significantly–signed a title application with a detailed description of the collateral that listed Larry Hortman as a lienholder. Taken together, these three documents demonstrate the parties' intent to create a security interest. This conclusion is supported by Debtor's testimony that he understood he was giving Larry Hortman a lien on the truck until the note–which included amounts loans for purchase of the truck–was satisfied and that the lien evidenced a security interest.

Debtor has argued the documents are ineffective to create a security interest because they are unclear about which debt is covered by the lien. Debtor owes multiple debts to the Hortmans, including an unsecured debt for rent, as demonstrated by a separate proof of claim they filed in this case. See supra, n.1. However, the evidence indicates Debtor signed the promissory note in conjunction with purchasing the truck and giving Larry Hortman a lien on the truck. Although the title application and note were dated one day apart, Debtor testified he signed them on the same day and understood the lien would continue until he paid off the note. Consequently, the Court is persuaded that Debtor intended the lien to secure the note.

For the foregoing reasons, the Court finds the parties entered into a security agreement. Because there is no dispute that the other requirements for an enforceable security interest are satisfied, the Hortmans are entitled to treatment as secured creditors for purposes of claim no. 1, and the Court will sustain their objection to confirmation.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT